# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY V. GLOSCHAT, Individually and on Behalf of All Others Similarly Situated,<br><br>                                                    Plaintiff,<br><br>               v.<br><br>APHRIA INC., VICTOR NEUFELD, and CARL MERTON,<br><br>                                                    Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony V. Gloschat ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aphria Inc. ("Aphria" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Aphria securities between October 18, 2018, and December 3, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Aphria is headquartered in Leamington, Canada. The Company produces and sells medical cannabis in Canada and internationally. The Company offers sativa, indica, and hybrid medical marijuana products, as well as cannabis oils. It serves patients and health professionals. The Company also sells its products online.

3.      Aphria's common stock first began trading on the New York Stock Exchange ("NYSE") on November 2, 2018. The Company has made numerous acquisitions in the cannabis industry since it began its initial operations in Canada.

4.      On January 29, 2018, the Company announced its acquisition of Nuuvera Inc. ("Nuuvera") for approximately C$826 million, which was completed on March 23, 2018 (at a reduced price valued at approximately C$425 million). Announcing the acquisition, the Company touted Nuuvera as "a leading, global cannabis company with a strong presence in Europe, Africa and the Middle East[.]"

5.      Then, on July 17, 2018, the Company issued a press release announcing its planned expansion into Latin America and the Caribbean, through a massive transaction whereby Aphria acquired Scythian Biosciences Inc. ("Scythian") for approximately C$280 million, in cash and Company stock.

6.    According to various public statements by the Company and media reports, Andy DeFrancesco ("DeFrancesco"), controller of the Delavaco Group ("Delavaco"), a purported private equity fund, participated in the founding investment of Aphria.  DeFrancesco and the Delavaco Group have purportedly invested or advised on every Aphria equity financing.

7.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Aphria engaged in numerous fraudulent acquisitions and transactions in order to provide undisclosed benefits to its insiders; (ii) Aphria substantially overpaid for the assets it acquired in 2018, which in reality had questionable value or were worthless; (iii) Aphria acquired these assets from undisclosed related parties, including Andy DeFrancesco; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.    On December 3, 2018, Hindenburg Research ("Hindenburg") published an article entitled "Aphria: A Shell Game with a Cannabis Business on the Side," alleging that "Aphria is part of a scheme orchestrated by a network of insiders to divert funds away from shareholders into their own pockets." The article cited a thorough, on-the-ground investigation into Aphria's latest investments and described in detail the poor quality and questionable value of those investments and was accompanied by photographs.

9.    Following publication of the Hindenburg article, Aphria's stock price fell $1.85 per share, or roughly 23.4%, to close at $6.05 per share on December 3, 2018.

10.    Then, on December 4, 2018, the *Financial Post* published an interview with DeFrancesco to address the allegations described above. DeFrancesco seemingly confirmed his

participation in the transactions, stating that the use of shell companies was not unusual in private equity transactions and defending the quality of the assets.

11.    On this news, Aphria's stock price fell an additional $1.54 per share, or 25.45%, to close at $4.51 per share on December 4, 2018.

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b). Aphria securities are traded on NYSE, located within this Judicial District.

16.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.    Plaintiff, as set forth in the attached Certification, acquired Aphria securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant Aphria is a Canadian corporation with its principal executive offices located at 265 Talbot St. W., Leamington, Ontario, N8H 4H3, Canada. Aphria's shares trade in an efficient market on the NYSE under the ticker symbol "APHA."

19.     Defendant Victor Neufeld ("Neufeld") has served at all relevant times as Chief Executive Officer of Scythian. Neufeld served as a director of Aphria from January 2018 until April 2018.

20.     Defendant Carl Merton ("Merton") has served at all relevant times as the Chief Financial Officer of Aphria.

21.     The Defendants referenced above in ¶¶ 18-19 are sometimes referred to herein collectively as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    Aphria is headquartered in Leamington, Canada. Aphria produces and sells medical cannabis in Canada and internationally, offering sativa, indica, and hybrid medical marijuana products, as well as cannabis oils. Aphria serves patients and health professionals. The Company also sells its products online.

24.    The Company has made numerous acquisitions in the cannabis industry since it began its initial operations in Canada. Among these acquisitions was its purchase of Nuuvera, a self-described global cannabis company.

25.    On January 29, 2018, the Company announced its acquisition of for approximately C$826 million, which was completed on March 23, 2018 (at a reduced price valued at approximately C$425 million). Announcing the acquisition, the Company touted Nuuvera as "a leading, global cannabis company with a strong presence in Europe, Africa and the Middle East[.]"

26.    Following the announcement of the Nuuvera acquisition, Hindenburg published an article raising concerns with the transactions. For example, the article noted that Aphria insiders, including the Individual Defendants, held 0.9% of the target, but decidedly failed to disclose their ownership. Hindenburg also was suspicious of Nuuvera's value because it heavily relied on paid stock promotion, and that DeFransesco who claimed to be the "architect" of the transaction had multiple close business interests with notorious fraudster Barry Honig.[1]

27.    Upon public coverage of the Hindenburg article, the Company strongly attacked the author's credibility and the veracity of the report.  However, in an interview published by the

---

[1] On September 7, 2018, Mr. Honig was charged by the SEC for engaging in multiple fraudulent pump-and-dump schemes.

*Financial Post* on March 27, 2018, Defendant Neufeld acknowledged that "seven or eight insiders including independent board members … all participate[d] [in an] early… private round of Nuuvera financing[,]" and adding that "[t]his is not material."

28.     Since its acquisition of Nuuvera, Aphria has acquired several additional entities in Jamaica, Colombia, and Argentina.   On July 17, 2018, the Company issued a press release announcing its planned expansion into Latin America and the Caribbean, through a massive transaction whereby Aphria acquired Scythian for approximately C$280 million, in cash and Company stock.   On October 25, 2018, Scythian changed its name to SOL Global Investments Corp.

29.     Aphria's common stock began trading on the NYSE on November 2, 2018.

**Materially False and Misleading Statements Issued During the Class Period[2]**

30.     The Class Period begins on October 18, 2018, when the Company filed a Registration statement on Form 40-F pursuant to Section 12 of the Exchange Act (the "Registration Statement"). The Registration Statement was signed by Defendant Merton.

31.     The Registration Statement stated that the Company "prepares its financial statements, which are filed with this report on Form 40-F in accordance with International Financial Reporting Standards as issued by the International Accounting Standards Board, and the audit is subject to Canadian auditing and auditor independence standards."

32.     Additionally, the Registration Statement incorporated as exhibits each of the previously published corporate filings and press releases discussed *infra* at ¶¶ 32-50. Collectively, these filings conveyed a false and misleading picture of Aphria's business and operations to U.S. investors.

---

[2] Emphasis added unless otherwise noted.

a.      **Acquisition of Overvalued Assets**

33.      On January 29, 2018, the Company issued a press release (attached as Exhibit 99.55 to the Registration Statement) announcing that it entered into a definitive arrangement agreement to acquire Nuuvera for approximately C$826 million.   The Company claimed Nuuvera was "a leading, global cannabis company with a strong presence in Europe, Africa and the Middle East[.]" Therein, the Company provided the following rationale for the transaction:

- Creates the Global Leader in the International Medical Cannabis Market: Aphria will leverage *Nuuvera's numerous relationships in Germany, Italy, Spain, the United Kingdom, Malta, Israel, Lesotho and Uruguay. Combined with Aphria's existing agreements in Australia, the combined company establishes a leading international footprint among Canadian licensed producers, and expands Aphria's processing and manufacturing capabilities globally.*

- Combines Complementary, Best-In-Class Core Competencies: The acquisition of Nuuvera bolsters Aphria's recent accretive and value-add transactions, including Broken Coast Cannabis, proud producers of small-batch, premium-quality B.C. bud. *Nuuvera's expertise in extraction, distillation and processing of advanced medical-grade derivative products supported by Aphria's low-cost, high-quality cultivation to scale unlocks greater economic value for the combined compa*ny. The acquisition expands upon the existing strategic relationship between Aphria and Nuuvera, established through multiple off-take agreements. As a result of the transaction, Aphria will capture the retail margin of the 77,000 kg of cannabis originally earmarked for these agreements. The combined company will unlock greater economic value from future production, including expectations of realizing supply chain efficiencies, cross-selling and up-selling to customers through a broader product portfolio, developing a more diverse customer base, integrating operations and controls and implementing best practices.

- Adds Highly Experienced and Complementary Management Team: Aphria will benefit from Nuuvera's highly-experienced, global management team and the international expansion opportunities it has secured at an accelerated pace. Nuuvera's reputation for offering the highest quality in purified cannabinoid products has set it apart from its competitors. The Nuuvera management team will play a meaningful role within the combined company going forward.

- Provides Access to State-of-the-Art Testing and Extraction Facilities: The combined company, through Nuuvera, has access to the only standalone

Health Canada GMP-approved facility that is authorized and dedicated under its controlled drugs and substances licence to conduct commercial scale activities with respect to cannabis and cannabinoids. This state-of-the-art medical laboratory enables Nuuvera to maintain the highest standards by adhering to both Health Canada and FDA pharmaceutical GMP guidelines, ensuring product safety, quality, and efficacy.

34.    Commenting on the transaction, Defendant Neufeld stated that "[t]he combination of Aphria and Nuuvera creates a true global leader in medical cannabis with excellent potential for growth and value creation. . . . This transaction, which builds on a long-standing relationship between the two companies, brings together our top tier ability to grow high-quality cannabis at a low-cost with Nuuvera's expansive international network, expertise in processing, and access to industry leading technology."

35.    On March 21, 2018, the Company announced in a press release (attached as Exhibit 99.73 to the Registration statement) that it signed an exclusive supply agreement with an Argentinian-based pharmaceutical import and distribution company, ABP Pharma, which is licensed to import, sell and distribute medical products and derivatives in Argentina. Under the terms of the agreement, Aphria became the exclusive supplier of cannabis products to the importer to the Argentina market.

36.    In the press release, Defendant Neufeld stated: "We are excited to enter the Argentine market through this initial supply agreement. . . . We see tremendous potential for medical cannabis in several emerging markets in South America, including Argentina. As the leading low-cost supplier of high-quality medical cannabis, Aphria will continue to expand its global leadership through strategic investments, partnerships and exclusive agreements such as this one."

37.    On May 16, 2018, the Company announced in a press release (attached as Exhibit 99.92 to the Registration statement) that it signed an exclusive supply agreement with Colcanna

SAS, a Colombian based pharmaceutical import and distribution company, which was purportedly licensed to import, sell and distribute medical cannabis, medical products and derivatives in Colombia. Under the terms of the agreement, the Company will be the exclusive supplier of cannabis products to Colcanna for the Colombian market and Colcanna will purchase medical cannabis products from Aphria exclusively.

38.     In the press release, Defendant Neufeld reiterated his prior statements, stating that "We see tremendous potential for medical cannabis in several emerging markets, including Colombia. . . . We are thrilled to enter the Colombian-market through this exclusive agreement with Colcanna. Aphria will continue to expand its global leadership through strategic investments, partnerships and agreements such as this one."

39.     On July 17, 2018, the Company issued a press release (attached as Exhibit 99.111 to the Registration statement) announcing its planned expansion into Latin America and the Caribbean. In particular, the Company announced that it entered into an agreement with Scythian whereby it acquired numerous companies in Colombia, Argentina, Jamaica and a right of first offer and refusal with respect to a Brazil entity. Pursuant to the transaction, Aphria acquired 100% of the issued and outstanding common shares of LATAM Holdings, a direct, wholly-owned subsidiary of Scythian, for approximately C$193 million (collectively, the "LATAM Transaction"). The Company stated that it expected to issue to Scythian 15,678,310 Aphria shares in connection with the LATAM Transaction, representing approximately 6.3% of the currently issued and outstanding shares of Aphria, calculated on a non-diluted basis.

40.     The press release included the following purported highlights of the LATAM Transaction:

- Solidifies Aphria's leadership position in the global cannabis industry

- Provides Aphria with *world class assets* in the most advanced regulatory jurisdictions across LATAM and Caribbean markets, from which it can further grow and expand its international operations

- Strengthens Aphria's leading international management team with the addition of proven local LATAM and Caribbean executives

- Establishes Aphria's presence in the most advanced strategic market in South America, Colombia

- Gains first mover advantage in Argentina for eventual in country cultivation

- Acquires market leadership in Jamaica with the only producing Tier 3 cultivator license in the country

- Yields strategic rights to potentially expand into Brazil, the largest population in South America

- Delivers accretive cash flow beginning in calendar 2019

41. The press release further detailed the various aspects of the Company's newly acquired assets, stating in relevant part:

**Colombia — Strategic Launch Pad into South America**

Colcanna S.A.S. ("Colcanna" or the "Colombian Company"), will be the first company in the Coffee Zone of Colombia with cultivation and manufacturing licenses for the production of medicinal extracts of cannabis, a research license and a license for the production and extraction of cannabis, including cannabis oil, for domestic use and for export. It is in the advanced licensing stages for a THC license.

Unlike the former Guerilla territory where other global cannabis companies have focused their investments, the Coffee Zone has always been a land of peace, high productivity and progress. Colcanna sits on 34 acres of highly fertile, predominately flat land, which is essential for the optimal cultivation of cannabis. As a result, greenhouses will occupy more than 20 acres of the property and, with 6 harvests per year and two natural sources of water for irrigation, Colcanna is expected to achieve an initial annualized production of 30,000 kg, growing to 50,000 kgs but with access to the country's micro-scale growers, suitable for supplying the country and the region with high-quality medical cannabis.

**Argentina — First Mover Advantage**

11

ABP, S.A. ("ABP" or the "Argentinean Company") is an established and successful pharmaceutical import and distribution company that holds a series of licenses, including for the import of CBD oil, notably the first company in Argentina to have received this license.

The Argentinean Company operates a pharmaceutical distribution warehouse and retail pharmacy and distributes to an extensive network of pharmacies, distributors, government clinics and hospitals throughout Argentina. ABP also holds agreements with the Top 20 health insurance companies, a strategic advantage in reaching patients accessing Argentina's free public healthcare system.

ABP is at the forefront of in-country medical cannabis research and clinical trials with two significant Medical Cannabis Cooperative Agreements. The Argentinean Company has partnered with Hospital Garrahan, a leading pediatric hospital in Buenos Aires, for a clinical study on the treatment of refractory epilepsy in children, and with Universidad Nacional De La Plata to support advances in medical cannabis research and education.

### Jamaica — Only Producing Commercial Tier 3 License

Marigold Projects Jamaica Limited ("Marigold" or the "Jamaican Company") has been granted several key licenses by the Jamaican Cannabis Licensing Authority, including:

- A Tier 3 license to cultivate more than five acres of land with cannabis for medical, scientific and therapeutic purposes. This license is the highest level of license available in Jamaica, and currently only one other company has been approved for a Tier 3 license;

- A conditional Tier 2 license to process cannabis for medical, scientific and therapeutic purposes, including the manufacturing of cannabis-based products, in a space of over 200 square meters;

- A conditional herb house retail license to sell cannabis products for medical, scientific and therapeutic purposes, with a space for immediate consumption by consumers, including tourists;

- A conditional therapeutic retail license to provide therapeutic or spa services utilizing cannabis products; and

- A conditional R&D license.

***Lloyd Tomlinson will continue as Marigold's Managing Director and will be appointed Director, Jamaica Operations at Aphria International***. Mr. Tomlinson, a Jamaican native, has more than 20 years' experience in the pharmaceutical industry and as the CEO of Blue Manhoe Estate he became the third-generation of his family to run the family's coffee business. In 2014, Mr.

Tomlinson made history when he launched Timeless Herbal Care, Jamaica's first medical cannabis company.

**Brazil — Strategic Option for Major Market**

The Company also remains focused on identifying the most attractive emerging opportunities through the region, including in Brazil where, as a result of the Transaction, the Company will receive a right of first offer and refusal (collectively the "Rights") in respect of a majority interest, upon the receipt of a license, in the entity receiving the license. With a population over 200 million and a comprehensive National Healthcare System, Brazil is poised to become an important market for medical cannabis, and Aphria's regional and corporate leadership remain connected to the rapidly evolving opportunity in Brazil.

**Impactful Leadership for LATAM and the Caribbean**

Scythian's highly experienced and well-regarded LATAM and Caribbean management team will join Aphria International as a critical component to this Transaction. Collectively, they have significantly advanced the opportunities at each of the companies acquired in this Transaction, while laying the groundwork for future growth in many countries throughout the region. They have built deep rosters of relationships throughout the region and, in particular, remain closely connected to governmental and regulatory agencies that are leading the rapid evolution of medical cannabis in LATAM.

The team will be led by Gabriel Meneses, who will be appointed Vice President, LATAM and Caribbean at Aphria International. Mr. Meneses will bring more than 14 years of extensive international leadership experience to Aphria International, where he will oversee the development of new market opportunities in Latin America while leading other initiatives that further stimulate the Company's growth in the regions' markets. He previously worked for Apple Inc., where he led the launch of Apple's first Commercial & Enterprise sales Organizations in Latin America and the Caribbean.

**Quotes from Leadership**

*"Aphria is proud with this initiative to create a true leader in medical cannabis across LATAM and extend our leadership in the global industry*," said Vic Neufeld, Chief Executive Officer at Aphria. "We have spent a considerable amount of time and resources evaluating opportunities in Latin America and the Caribbean and we are confident in the long-term strategic opportunity and the value it will bring to our shareholders. The Transaction, once completed, will firmly place Aphria at the center of the medical cannabis industry in the region, and will provide the strong foundation, relationships and infrastructure to capture significant future growth as more LATAM and Caribbean markets evolve. *We truly have the best international team in the business, and we are continuing to*

***bring our industry-leading expertise, experience and know-how to strategic international markets***."

\*        \*        \*

**Aphria will acquire the following entities through LATAM Holdings:**

- 90% of Colcanna, a Colombian medical cannabis producer, currently holding a CBD cultivation license from the Ministry of Justice and holding a license for processing, extraction, production and research for the local market and export for the international market of cannabis derivatives, from the Ministry of Health. Colcanna expects to receive its THC license from the Ministry of Justice within the next month;

- 100% of ABP, an Argentinean pharmaceutical import and distribution company, currently licensed for the importation of CBD oil for the purposes of research and development;

- 100% of Marigold Acquisitions Inc., a BC incorporated entity, which owns 100% of Hampstead Holdings Ltd., a Bermuda incorporated entity, which owns 49% of Marigold Projects Jamaica Limited, which has received a license to cultivate and conditional licenses to process, sell and provide therapeutic or spa services using cannabis products; and,

- The Rights to purchase 50.1% of a Brazilian incorporated entity, which Scythian is currently seeking to acquire, which is expected to hold a medical cannabis cultivation, processing and distribution license in Brazil, upon receipt of a license, for $24 million USD, and an additional right of first refusal to acquire an additional 20-39% of the same entity at fair market value at the time.

The Transaction will proceed by way of a share purchase of LATAM Holdings by Aphria and is subject to a "majority of the minority" approval requirement by Scythian shareholders (excluding Aphria and its affiliates), receipt of required regulatory and stock exchange approvals, and other customary conditions of closing. Aphria has secured irrevocable hard lock-ups (the "Lock-Ups") from approximately 40% of the shareholders of Scythian to vote in favour of the Transaction, and also holds an approximate 9% interest in Scythian, together with 672,195 outstanding warrants of Scythian, representing an additional 4% interest of Scythian calculated on a fully diluted basis. Collectively, the shares subject to these Lock-Ups represent, together with the Scythian shares already owned by Aphria, approximately 50% of the currently outstanding Scythian shares.

14

b.    **Undisclosed Conflicts of Interest**

42.    Also appended to the Registration Statement as Exhibit 99.3 was Aphria's Annual Information Form for the fiscal year ended May 31, 2018, dated July 31, 2018 (the "Annual Report"). The Annual Report contained merely a boilerplate warning that the Company is exposed to the risk of "[f]raudulent or [i]llegal activity by its employees, contractors and consultants", without disclosing that these risks were not merely speculative, but had in fact already materialized.

43.    In the Annual Report, Aphria also purported to maintain adequate conflicts of interests procedures, stating in relevant part:

> We may from time to time become involved in transactions which conflict with the interests of our directors and the officers. The interests of these persons could conflict with those of the Company. Conflicts of interest, if any, will be subject to the procedures and remedies provided under applicable laws. In particular, in the event that such a conflict of interest arises at a meeting of our directors, a director who has such a conflict will abstain from voting for or against the approval of such participation or such terms. In accordance with applicable laws, the directors of the Company are required to act honestly, in good faith and in the best interests of the Company.

44.    Relatedly, the Company stated that it maintains an Audit Committee that is tasked with, *inter alia*, "ensuring that an effective risk management and financial control framework has been implemented and tested by management of Aphria":

> The Audit Committee has the primary function of fulfilling its responsibilities in relation to reviewing the integrity of Aphria's financial statements, financial disclosures and internal controls over financial reporting; monitoring the system of internal control; monitoring Aphria's compliance with legal and regulatory requirements, selecting the external auditor for shareholder approval; reviewing the qualifications, independence and performance of the external auditor; and reviewing the qualifications, independence and performance of Aphria's internal auditors. The Audit Committee has specific responsibilities relating to Aphria's financial reports; the external auditor; the internal audit function; internal controls; regulatory reports and returns; legal or compliance matters that have a material impact on Aphria; and Aphria's whistleblowing procedures. In fulfilling

its responsibilities, the Audit Committee meets regularly with the internal and external auditor and key management members. . . .

45.    The Annual Report further warns investors that "[i]t is not always possible for the Company to identify and deter misconduct by its employees and other third parties, and the precautions taken by the Company to detect and prevent this activity may not be effective in controlling unknown or unmanaged risks or losses or in protecting the Company from governmental investigations or other actions or lawsuits stemming from a failure to be in compliance with such laws or regulations."

46.    In discussing potential conflicts of interests by "management and others in material transactions" in the Annual Report, the Company only discloses a single transaction, unrelated to the LATAM Transaction, involving Cole Cacciavillani, Director and Chief Operating Officer of Aphria:

> Prior to June 30, 2016, Aphria leased its greenhouse facilities from CF Greenhouses. CF Greenhouses is a greenhouse growing company controlled in part by Cole Cacciavillani, Director and Chief Operating Officer of Aphria. On June 30, 2016, Aphria acquired 360,000 square feet of production space, located on 36 acres of land from CF Greenhouses for total consideration of $6.1 million. The $6.1 million purchase price was satisfied by a $3.25 million cash payment and CF Greenhouses assuming a vendor take back mortgage, in the amount of $2.85 million, with a 5-year amortization period and bearing interest at 6.75%.

47.    The Annual Report does, however, list a number of other acquisitions, which are not identified as conflicted transactions.  For example, it was disclosed that on February 5, 2018, Aphria sold its interest in Liberty Health Sciences Inc. ("Liberty"). Liberty purports to be an investor and operator in the medical cannabis market, capitalizing on new and existing opportunities in U.S. states where medical cannabis is legal. In particular, the Company sold 80% of Liberty to individuals affiliated with Serruya Private Equity, and the remaining 20% to an affiliate of Delavaco.  In connection with this transaction, the Company issued a press release (attached as Exhibit 99.58 to the Registration Statement) which asserted that the Company's

board of directors formed a special committee of unnamed  independent directors to evaluate the transaction:

> An independent special committee (the "Aphria Committee") of the board of directors of Aphria (the "Aphria Board") received a fairness opinion from Cormark Securities Inc., independent financial advisors to Aphria, that as of February 4, 2018, and subject to the assumptions, limitations and qualifications on which such opinions are based, the Transaction is fair from a financial point of view. The Aphria Committee unanimously recommended the approval of the Transaction to the Aphria Board. Subsequently, the Transaction and the entering into of the purchase and sale agreement and other transaction agreements were unanimously approved by the eligible directors of the Aphria Board.

48.    Additionally, in a Company press release, dated June 6, 2018, attached as Exhibit 99.98 to the Registration Statement, the Company announced that it sold approximately 19 million shares for C$225 million.  Therein, the Company states that "[i]n connection with the Offering, Delavaco Group has been appointed as a special advisor to the Company." Additionally, Delavaco was also "appointed as a special advisor" in connection with other offerings of the Company, which were announced via press releases on October 17, 2017 (attached as Exhibit 99.32 to the Registration Statement), and December 13, 2017 (attached as Exhibit 99.42 to the Registration Statement).

49.    When the Company announced its acquisition of Nuuvera on January 29, 2018, (attached as Exhibit 99.55 to the Registration Statement) it stated that "[t]he Board of Directors of Aphria has received an opinion from Cormark Securities that, as of January 28, 2018, and subject to the assumptions, limitations and qualifications on which such opinions are based, the consideration to be offered by Aphria is fair, from a financial point of view, to Aphria."

50.    Finally, in the Company's July 17, 2018 press release (attached as Exhibit 99.111 to the Registration statement), the Company discusses certain conflicting interests of Aphria "insiders" with respect to the acquisition of Scythian:

*Insiders of Aphria, including Mr. Neufeld, Mr. Cacciavillani, Mr. Cervini and Ms. Persofsky, currently hold an aggregate of 20,496 shares and 215,887 warrants of Scythian representing approximately 2.1% of Scythian on a fully diluted basis*, which warrants have an exercise price of $5.50 per Scythian share and which currently exceeds the closing price of Scythian as of the date of the Agreement. *Mr. Neufeld and Ms. Persofsky, current directors of Aphria, previously stepped down as directors from the Board of Directors of Scythian in the previous quarter*. As part of leaving the Board of Directors of Scythian, Mr. Neufeld forfeited 160,000 options at an exercise price of $4.66, 140,000 options at an exercise price of $5.28 and 200,000 DSUs. *In respect of the Transaction, certain members of the Board of Directors of Aphria (Mr. Neufeld, Mr. Cacciavillani, Mr. Cervini and Ms. Persofsky) holding shares or warrants in Scythian* disclosed such interests to the Board of Directors of Aphria and all recused themselves from the meeting of directors during which the Transaction was discussed and from voting on the resolution approving the Transaction.

51.     In light of these conflicts of interests, the Company stated that "[t]he Board of Directors of Aphria has received a fairness opinion from Cormark Securities that, as of July 16, 2018, and subject to the assumptions, limitations and qualifications on which such opinions are based, the consideration to be offered by Aphria in respect of the Transaction is fair, from a financial point of view, to Aphria. The eligible directors of Aphria, after receiving legal and financial advice, have unanimously approved the Transaction."

52.     The statements referenced in ¶¶ 29-50 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aphria engaged in numerous fraudulent acquisitions and transactions in order to provide undue benefits to its insiders; (ii) Aphria substantially overpaid for the assets it acquired in 2018, which in reality had questionable value or were worthless; (iii) Aphria acquired these assets from undisclosed related parties, including Andy DeFrancesco;; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

53.     On December 3, 2018, Hindenburg Research published an article entitled "Aphria: A Shell Game with a Cannabis Business on the Side," alleging that "Aphria is part of a scheme orchestrated by a network of insiders to divert funds away from shareholders into their own pockets." The article detailed a thorough and on-the-ground investigation into Aphria's latest investments that revealed the poor quality and worth of the assets of those investments.

54.     The Hindenburg article exposed the *modus operandi* of Aphria and its insiders, including DeFrancesco:

- Aphria insider Andy DeFrancesco sets up or acquires an international company, providing a token justification for an acquisition (e.g., conditional cannabis licenses, a leased facility, purchasing a small existing local business.)

- The international company is then purchased by a Canadian shell company under the control of DeFrancesco through his closely held private equity firm, the Delavaco Group.

- The shell company agrees to be acquired by Aphria's 'sister' company, Scythian Biosciences, where Vic Neufeld, Aphria's Chairman/CEO, and DeFrancesco hold key insider roles.

- Scythian then sells its stake in the entity to Aphria at a large markup.

- As a result, DeFrancesco and unnamed associates get cash and/or Scythian shares, Scythian gets cash and/or Aphria shares, and Aphria's shareholders get international assets that are essentially worthless.

55.     In specific regard to the LATAM Transaction, the article details precisely how the Transaction follows the above-described "business" strategy:



56.     Hindenburg's on-the-ground investigation of the LATAM Transaction assets reportedly uncovered, *inter alia*:

- Certain of Aphria's purported assets in Jamaica and South America appeared to consist of empty and dilapidated offices and warehouses;

- Certain of Aphria's companies had overstated revenues;

- Certain of Aphria's companies did not hold the requisite licenses to produce and/or distribute cannabis; and

- The existence of undisclosed connections between Aphria's acquisitions and DeFrancesco.

57.     On this news, Aphria's shares fell $1.85 per share, or about 23.4%, to close at $6.05 on December 3, 2018.

58.     Then, on December 4, 2018, the *Financial Post* published an interview with DeFrancesco to address the allegations described above. DeFrancesco seemingly confirmed his participation in the transactions, stating that the use of shell companies was not unusual in private equity transactions and defending the quality of the assets.

59.     On this news, Aphria's shares fell an additional $1.54 per share, or 25.45%, to close at $4.51 on December 4, 2018.

60.     On December 6, 2018 Cornerstone Investments published an article concerning Aphria, which concluded that Hindenburg's investigation "presented tangible and compelling evidence of potential problematic dealmaking related to Aphria's LATAM acquisition[,]" and that "we applaud their information as another source of diligence for all investors. We think the analysis presented by QCM and Hindenburg is compelling and warrants serious responses from Aphria's board, management, and advisors."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aphria securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aphria securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Aphria or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

64.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

65.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Aphria;

- whether the Individual Defendants caused Aphria to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aphria securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

67.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aphria  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Aphria securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

68.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

69.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

70.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

72.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aphria securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aphria securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

73.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Aphria securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aphria finances and business prospects.

74.    By virtue of their positions at Aphria , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

75.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Aphria, the Individual Defendants had knowledge of the details of Aphria internal affairs.

76.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Aphria.  As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aphria

businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Aphria securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Aphria business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Aphria securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

77.    During the Class Period, Aphria securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aphria securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aphria securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Aphria securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

78.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

79.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     During the Class Period, the Individual Defendants participated in the operation and management of Aphria, and conducted and participated, directly and indirectly, in the conduct of Aphria business affairs.  Because of their senior positions, they knew the adverse non-public information about Aphria misstatement of income and expenses and false financial statements.

82.     As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aphria financial condition and results of operations, and to correct promptly any public statements issued by Aphria which had become materially false or misleading.

83.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aphria disseminated in the marketplace during the Class Period concerning Aphria results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aphria to engage in the wrongful acts complained

of herein. The Individual Defendants therefore, were "controlling persons" of Aphria within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aphria securities.

84.   Each of the Individual Defendants, therefore, acted as a controlling person of Aphria.  By reason of their senior management positions and/or being directors of Aphria, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aphria to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Aphria and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

85.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aphria.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 6, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.   I, _Anthony V. Gloschat_ make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities

Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Aphria Inc. ("Aphria" or the "Company") and, authorize the

filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Aphria securities at the direction of plaintiffs' counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Aphria securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Aphria

securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ____12-4-18____
                (Date)

_____
        (Signature)

Anthony V. Gloschat
        (Type or Print Name)

**Aphria Inc. (APHA)**                                                                                          **Gloschat, Anthony V.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 11/9/2018 | Purchase | 1,000 | $12.3300 |
| 11/12/2018 | Purchase | 1,000 | $11.3000 |
| 11/19/2018 | Purchase | 1,482 | $9.0000 |
| 12/3/2018 | Purchase | 518 | $6.4800 |